UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSE VASQUEZ,


                              Plaintiff,

                                                    DECISION AND ORDER

                                                    06-CV-6304L


            v.

WESLEY CANFIELD,


                              Defendant.
_____


        Plaintiff, Jose Vasquez, Plaintiff, an inmate in the custody of the New York State Department

of Correctional Services ("DOCS"), commenced this action under 42 U.S.C. § 1983.  Plaintiff

alleges that his rights under the Eighth Amendment to the United States Constitution were violated

in connection with certain medical treatment that he received from defendant Wesley Canfield, M.D.

in 2003, while plaintiff was confined at Elmira Correctional Facility ("Elmira").  At the time of the

relevant events, Dr. Canfield was employed by DOCS as a physician at Elmira.[1]

        Plaintiff commenced this lawsuit *pro se*.  The Court subsequently appointed counsel for

plaintiff pursuant to 28 U.S.C. § 1915(e)(1).  Dkt. #19.

_____

        [1]Plaintiff originally sued three other defendants as well.  Plaintiff's claims against those
defendants have been discontinued and dismissed, at plaintiff's request.  Dkt. #24.

Defendant has moved to for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

**DISCUSSION**

**I. Eighth Amendment Medical Claims: General Principles**

To show that an inmate's medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)). *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting *Chance*, 143 F.3d at 702).

The Supreme Court has explained that the "deliberate indifference" component includes both an objective and a subjective prong. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective element, the court must consider whether the deprivation was brought about by the defendant in wanton disregard of

those rights.  *Id.*  To establish deliberate indifference, then, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain.  *See id.* at 299; *Anderson v. Burge*, 539 F.Supp .2d 684, 687 (W.D.N.Y. 2008).

The Court in *Estelle* also cautioned that mere negligence is not actionable.  A prisoner's complaint that a medical professional "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06.  It is clear, then, that allegations of negligence alone do not state a constitutional claim.  *Id.* at 106 n. 14; *Chance*, 143 F.3d at 703-04.


## II. Application to this Case

Applying these principles to the case at bar, it is clear that defendant is entitled to judgment as a matter of law.  Even drawing all permissible inferences in plaintiff's favor, plaintiff cannot demonstrate the deliberate indifference–akin to criminal recklessness–that must be shown to establish an Eighth Amendment claim.  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The record shows that plaintiff suffered an injury in the area of his right ankle while playing handball on April 20, 2003.  He was seen and treated by a nurse that same day, and by Dr. Canfield

on the following day. Dr. Canfield ordered x-rays and a medi-wrap for plaintiff's ankle, and told plaintiff that he wanted to see him again in one week.

Plaintiff continued to be seen by Dr. Canfield over the following weeks. The gist of plaintiff's claim is that Dr. Canfield misdiagnosed plaintiff's injury as a sprain. It was not until June 17, 2003 that a physical therapist (whom plaintiff was seeing for a preexisting back injury) determined that plaintiff had a problem in his right Achilles tendon. After receiving the physical therapist's report, on June 19, 2003 Dr. Canfield referred plaintiff to an orthopedic specialist. The orthopedic specialist saw plaintiff on July 23, 2003, and found that plaintiff had suffered a rupture to his Achilles tendon that required "urgent reconstruction ... within 10 days." Plaintiff's Rule 56 Counter-Statement (Dkt. #32) Ex. 13. Plaintiff did undergo surgery on August 11, 2003.

Plaintiff alleges that due to Dr. Canfield's misdiagnosis, plaintiff suffered extreme pain for months, in part because, based on Canfield's erroneous belief that plaintiff had simply sprained his ankle, plaintiff had been exercising his right leg and ankle, as he had been instructed to do by Dr. Canfield. Plaintiff alleges that this was exactly what he should not have been doing for a ruptured Achilles tendon. Plaintiff also alleges that his eventual surgery was more complicated than it would have been had his condition been correctly diagnosed sooner, that he developed an infection at the surgery site following the surgery, and that he suffers from permanent muscle deterioration as a result of the delay in correct diagnosis and proper treatment.

With particular regard to Dr. Canfield, plaintiff alleges that given plaintiff's symptoms, Dr. Canfield should have palpated, *i.e.*, felt with his hands, the area around plaintiff's Achilles tendon. Plaintiff alleges that Dr. Canfield did not do so, and that if he had, he would have realized that

plaintiff's Achilles tendon had been injured, with the result that plaintiff would have been properly treated weeks or months sooner, and suffered less pain and had fewer complications than he did.  In support of those assertions, plaintiff has submitted an affirmation of Michael Zionts, M.D., who opines, based on his review of plaintiff's medical records, that Dr. Canfield's alleged failure to palpate plaintiff's ankle area goes beyond medical malpractice, and amounts to a complete failure to provide proper treatment.  Dkt. #32.

At his deposition, Dr. Canfield testified that he could not remember whether he palpated the area around plaintiff's injury or not.  Dkt. #28-4 at 77.  Regardless of whether he did so, however, it is clear that Dr. Canfield did not act with deliberate indifference to plaintiff's injury.  He did treat plaintiff, and once he was given the physical therapist's opinion that plaintiff had suffered an injury to his Achilles tendon, Dr. Canfield very promptly ordered a referral to an orthopedic specialist. That hardly suggests a culpable, wanton desire to inflict pain on plaintiff.

Even drawing every reasonable inference in plaintiff's favor, then, he has shown no more than that Dr. Canfield may have been negligent, or that at least he did not do everything that he could have to diagnose plaintiff's injury promptly.   No rational finder of fact could conclude that Dr. Canfield deliberately chose to ignore plaintiff's injury out of a desire to inflict unnecessary pain on plaintiff.  Even if a factfinder could reasonably conclude that Dr. Canfield was guilty of malpractice (and the Court expresses no opinion in that regard), there is simply no basis upon which to find that he acted with the requisite, culpable state of mind necessary to support an Eighth Amendment claim.

In short, it is unfortunate that plaintiff's ruptured Achilles tendon was not diagnosed sooner, but as stated, even "medical malpractice does not become a constitutional violation merely because

the victim is a prisoner." *Estelle*, 429 U.S. at 106.   Dr. Canfield's diagnosis and treatment did not amount to a "wanton infliction of unnecessary pain," nor were they so egregious as to be "repugnant to the conscience of mankind." *Id.*   Dr. Canfield is therefore entitled to summary judgment. *See*, *e.g.*, *Tindal v. Goord*, No. 08-0544, 2009 WL 2043856, at *1 (2d Cir. July 15, 2009) (stating that prisoner's claim challenging the propriety of the diagnosis and treatment he received for a sexually transmitted disease or bacterial infection "is in the nature of medical malpractice, rather than deliberate indifference").

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #28) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        January 8, 2010.